**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**SCOTT M. ALEXANDER,**
Plaintiff,

v. **Case No. 1:25-cv-00934-APM**

**UNITED STATES GOVERNMENT, et al.,**
Defendants.

# PLAINTIFF'S REPLY IN FURTHER SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT ON COUNT I AND IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## INTRODUCTION

This case is not a broken-link dispute, a website-design dispute, or a request for a new disclosure system. It is a statutory conformance dispute under § 2394c. Congress imposed mandatory, parallel duties for covered foreign-assistance transparency: administering departments and agencies "shall provide" the Secretary of State with comprehensive information about covered programs, and the Secretary "shall publish" the subsection (b) information on the required schedule and within the required searchable coverage. 22 U.S.C. § 2394c(a)(2)-(3), (b), (c)(2). Defendants' "all available information" theory does not satisfy that continuing regime.

That statutory structure supplies the answer to Defendants' combined Opposition and Reply (ECF No. 78). The same conformance question was placed at issue in the parties' June 2, 2026 Joint Status Report and in ECF No. 76-1, and the Court identified that question on June 5: whether Defendants' website postings conform to § 2394c. ECF No. 71 at 1-3; ECF No. 76-1 at 2, 6. Defendants cannot answer that question by saying State posted whatever information it had, by pointing to a large administrative record, or by characterizing Plaintiff's requested compliance showing as "mapping."

The clearest conformance gap is concrete and mandatory. Section 2394c(b)(2)(A)(ii) requires basic descriptive summaries for covered foreign-assistance programs and awards under those programs. Defendants identify those summaries as the possible exception to their position that FATAA does not require agencies to generate new information, and they recognize that subsection (b)(2)(A)(ii) speaks to both program and award levels. Defs.' Opp'n at 5, 9. Yet their response points to activity-level screenshots and does not identify a separate FY 2023 Ukraine ESF program-level summary or a complete award-level universe. ECF No. 76-1 raised that exact gap. Id. at 5, 10-11. That alone precludes judgment on full conformance.

The award-level problem is equally important. Plaintiff treated Macroeconomic Support as part of the FY 2023 Ukraine ESF award universe, and Defendants themselves call it the "Macroeconomic Support award for Ukraine." Defs.' Opp'n at 9-10; ECF No. 76-1 at 4-5, 10-11. That record involves approximately $14.4 billion. Because FATAA requires transparency for programs and awards, Defendants cannot generalize from the single item-specific nonexistence showing they supplied for evaluations or treat a required award-level category as satisfied merely because broader program information exists elsewhere.

That leaves the case in the same posture as before Defendants' latest filing. Plaintiff is not asking the Court to design a website, create a new disclosure system, or compel every disputed document now. At minimum, the Court can deny Defendants' request for judgment and require a narrow remand or status showing that identifies the FY 2023 Ukraine ESF program-and-award universe, the public location and timing for each required category, and the item-specific statutory status of any category Defendants contend is unavailable, nonpublic, not required, late, or nonexistent.

The proper result follows from the statute, not from labels. If the record establishes nonconformance, Plaintiff is entitled to summary judgment on Count I. If the Court concludes that the record does not permit final merits resolution, the proper alternative is narrow remand or

supplementation requiring Defendants to identify the required FY 2023 Ukraine ESF program-and-award information, public locations, timing, and item-specific statutory statuses. That relief tests Defendants' full-compliance assertion without requiring the Court to design ForeignAssistance.gov. What Defendants cannot obtain is summary judgment on untested assurances that the continuing § 2394c duties have been fully performed.

## ARGUMENT

### I. DEFENDANTS IMPORT § 2394c(a)(1)'S ONE-TIME AVAILABILITY LIMITATION INTO THE CONTINUING FY 2023 REGIME.

Section 2394c(a) establishes a transition followed by continuing duties. Section 2394c(a)(1), captioned "Update of existing website," required the Secretary, within 90 days after July 15, 2016, to update the existing ForeignAssistance.gov website with subsection (b) information then "available to the Secretary of State." That was a one-time enactment deadline. Congress expressly used an availability limitation for that transitional update.

Congress then imposed a different continuing regime. Under § 2394c(a)(2), not later than two years after enactment "and quarterly thereafter," each department or agency administering covered assistance "shall provide" the Secretary with "comprehensive information" about the covered programs it carries out. Under § 2394c(a)(3), on the same continuing schedule, the Secretary "shall publish" the subsection (b) information. Congress did not repeat subsection (a)(1)'s phrase "available to the Secretary of State" in either continuing provision. That omission matters. See Russello v. United States, 464 U.S. 16, 23 (1983). Defendants' position effectively collapses the final quarterly regime back into the one-time transition rule. Plaintiff made this point in ECF No. 76-1. See ECF No. 76-1 at 7, 12-13.

Subsection (b), captioned "Matters to be included," gives content to those continuing duties. The information described in subsection (a) must be published for each country or region on a "detailed basis, such as award-by-award," § 2394c(b)(1), and "shall include" the specified

strategy, annual-budget, congressional-budget-justification, evaluation, summary, obligations, and expenditures categories, id. § 2394c(b)(2)(A). Section 2394c(b)(2)(B) then supplies the item-specific timing rule: each type of information described in subparagraph (A) must be published or updated not later than 90 days after issuance.

That parallel structure matters. Section 2394c does not impose only a website-posting duty on the Secretary of State. It also imposes a separate upstream duty on the departments and agencies responsible for carrying out covered United States foreign assistance programs to provide the Secretary with comprehensive information. If the administering department or agency failed to provide required FY 2023 Ukraine ESF information, § 2394c(a)(2) was violated. If the Secretary failed to publish, update, or maintain required subsection (b) information in searchable form, § 2394c(a)(3), (b), or (c)(2) was violated. Defendants therefore cannot establish conformance merely by saying that State posted everything it regarded as available.

## II. THE MISSING PROGRAM-LEVEL SUMMARY IS A DISCRETE MANDATORY GAP.

The clearest merits issue is the program-level descriptive summary. Section 2394c(b)(2)(A)(ii) requires "basic descriptive summaries for covered United States foreign assistance programs and awards under such programs." Congress named two units: the covered program and the awards under that program. Defendants themselves acknowledge that subsection (b)(2)(A)(ii) applies at both levels. Defs.' Opp'n at 9.

Defendants' answer points to activity-level screenshots at ECF No. 74-4 at 20-25. Those are the same mixed activity-level records Plaintiff identified in ECF No. 76-1; they do not identify a separate FY 2023 Ukraine ESF program-level descriptive summary, and they do not establish complete award-level summary coverage. ECF No. 76-1 at 5, 10-11, 15-16. That omission matters because Defendants identify basic descriptive summaries as the possible

exception to their argument that FATAA requires publication only of preexisting information. Defs.' Opp'n at 5. A mandatory, creatable, unanswered statutory item requires a compliance showing before Defendants can obtain judgment.

The point is not that Plaintiff prefers a different website layout. If the FY 2023 Ukraine ESF program-level summary exists, the record should identify where it was published and when. If it does not exist, that is not a defense to the continuing statutory regime; it indicates a failure in the statutory provide-and-publish chain, unless Defendants identify an item-specific statutory reason the category was not required or not public. The same logic applies to award-level summaries under the same provision and to the other subsection (b)(2)(A) categories where they apply.

## III. PLAINTIFF SEEKS MAPPING AS REMEDIAL RELIEF, NOT AS A NEW STATUTORY DISCLOSURE DUTY.

Defendants argue that Plaintiff seeks "website mapping and table creation" while admitting the statute does not use the word "mapping." Defs.' Opp'n at 1, 3-4, 8. Plaintiff agrees with the premise but not the conclusion. Plaintiff did request a mapping or equivalent status showing as relief. Plaintiff did not claim that mapping is itself a substantive statutory disclosure category. ECF No. 76-1 expressly said that Plaintiff "does not ask the Court to mandate a particular website design, database schema, or user interface," id. at 3, and that the requested mapping "is not itself a statutory disclosure requirement," id. at 19.

The discrete duties are the duties Congress imposed: providing comprehensive information, publishing the specified subsection (b) categories, doing so on the required schedule, and maintaining the prescribed searchable coverage. A court-ordered status report, remand explanation, or compliance mapping would be an equitable mechanism for showing

whether those duties were satisfied. It would not add a new foreign-assistance disclosure category to § 2394c.

Defendants' reliance on § 2394c(b)(2)(C) and § 2394c(b)(3) therefore does not resolve the issue. Subparagraph (C) limits substantive publication categories; subsection (b)(3) addresses explanations to Congress when public posting would be detrimental to national interests. Plaintiff does not seek a new public-disclosure category. He seeks remedial compliance information sufficient to test Defendants' full-conformance and mootness assertions: whether an item is public, lawfully nonpublic, outside the FY 2023 Ukraine ESF universe, late, or nonexistent. If Defendants are correct that every required item is already public, identifying those items, public locations, dates, and statutory statuses should require no new substantive foreign-assistance information. If the Court concludes mapping is not the proper form of relief, that would limit the remedy; it would not establish compliance on the merits.

## IV. "SUCH AS AWARD-BY-AWARD" IS ILLUSTRATIVE, BUT IT GIVES CONTENT TO CONGRESS'S MANDATORY "DETAILED BASIS" REQUIREMENT.

Defendants are correct in one narrow respect: because § 2394c(b)(1) says "such as award-by-award," award-by-award publication is an example rather than the exclusive permissible format. Defs.' Opp'n at 4-5. ECF No. 76-1 expressly said that the issue is whether the awards can be identified and retrieved on the detailed basis Congress required. ECF No. 76-1 at 10. Defendants go too far, however, when they turn flexibility in format into discretion to erase the level of granularity Congress chose to illustrate.

Congress required publication for each country, or each region where assistance is regional, "on a detailed basis, such as award-by-award." 22 U.S.C. § 2394c(b)(1). The mandatory phrase is "on a detailed basis." The words "such as" are illustrative, not limiting; they mean Congress did not freeze one required website format or label. But illustration is not irrelevance.

Congress chose "award-by-award" to show the kind and degree of detail contemplated by the mandatory command. Any substitute presentation, must provide comparable or larger itemized granularity. A reading under which broad account-level or country-level aggregation is always enough, regardless of whether subordinate awards can be identified, would deprive Congress's chosen example of practical effect. Duncan v. Walker, 533 U.S. 167, 174 (2001).

The surrounding text confirms that Congress expected public information below the umbrella program level. Section 2394c(b)(2)(A)(ii) separately requires "basic descriptive summaries for covered United States foreign assistance programs and awards under such programs." Defendants themselves quote and rely on that language. Defs.' Opp'n at 5, 9-10. The statute cannot be read as though the word "awards" were optional.

This matters especially for Macroeconomic Support. Plaintiff treated MES as part of the FY 2023 Ukraine ESF award universe, and Defendants themselves call it the "Macroeconomic Support award for Ukraine." Defs.' Opp'n at 9-10; ECF No. 76-1 at 4-5, 10-11. The record reflects approximately $14.4 billion in FY 2023 Ukraine ESF obligations tied to that record. FATAA was enacted to provide transparency into foreign-assistance programs and awards, not to allow the largest awards to appear as financial entries disconnected from the statutory information Congress identified. The point is that, when MES is treated as a statutory award, the required showing must be testable at that level where it applies: the award summary, applicable financial information, connection to relevant program materials, and any item-specific statutory basis for nonpublication or nonexistence. A roughly $14.4 billion award cannot be deemed compliant merely because a broader program record exists somewhere else.

ForeignAssistance.gov's broader "activity" label does not answer that statutory question. Plaintiff's Exhibit C shows that the site's help text uses "activity" to encompass projects, programs, cash transfers, deliveries of goods, training courses, research projects, debt-relief operations, and contributions to international organizations. ECF No. 76-4; ECF No. 76-1 at 15-

16. Defendants' own opposition confirms that at least one ForeignAssistance.gov "activity" is being treated as an award: the "Macroeconomic Support award for Ukraine." Defs.' Opp'n at 9-10. The label "activity" therefore does not establish whether any particular displayed record is the statutory award, the program, or another data object; nor does it establish that Defendants have identified the complete FY 2023 Ukraine ESF award universe.

**V. DEFENDANTS' REMAINING CHARACTERIZATIONS DO NOT RESOLVE THE STATUTORY CATEGORIES.**

**A. Plaintiff identified the specific statutory categories at issue.**

Defendants state that Plaintiff "does not point to any specific statutory category of documents or information, the absence of which is unexplained." Defs.' Opp'n at 4. That statement is contradicted by the filing itself. ECF No. 76-1 devotes twelve numbered facts to the unresolved program-and-award universe, link categories, program and award summaries, obligations and expenditures, 90-day timing, five-year searchability, evaluation status, and restoration/public-location issues. ECF No. 76-1 at 4-6. It then provides a statutory-requirements table identifying the covered program, country/region detail, detailed basis, links, program summaries, award summaries, obligations and expenditures, timing, searchability, and nonavailability. Id. at 10-11.

**B. Plaintiff did not admit that "each award" has the required summary and financial information.**

Defendants state that Plaintiff's own exhibit establishes that "[e]ach award" contains an individualized descriptive summary with associated obligations and disbursements "by Plaintiff's own admission." Defs.' Opp'n at 9-10. Their cited page does not support that assertion. ECF No. 76-2 at 22 says only that "MES continues to display a basic descriptive summary." It neither identifies the complete FY 2023 Ukraine ESF award universe nor states that every award has

such a summary. Plaintiff separately acknowledged that AR 20 provides a basic descriptive record for Macroeconomic Support while expressly stating that the AR does not identify a separate FY 2023 Ukraine ESF program-level descriptive summary or establish complete descriptive-summary coverage for the remaining FY 2023 Ukraine ESF awards. ECF No. 76-1 at 5.

**C. Timeliness was pleaded before the cross-motion.**

Defendants characterize the 90-day issue as Plaintiff's "first time" making a timeliness claim and a "last-ditch" attempt to keep the case alive. Defs.' Opp'n at 11. The operative pleading alleges that required public transparency items "were not publicly available as required by law (or were not timely produced)" and pleads a § 706(1) claim for agency action "unlawfully withheld or unreasonably delayed." ECF No. 58-10 at 2-3. The June 2 Joint Status Report then expressly placed in dispute whether the required information "was publicly available when required" and whether the disclosures were complete, timely, traceable, and statutorily compliant. ECF No. 71 at 1-3. ECF No. 76-1 then applied § 2394c(b)(2)(B)'s express 90-day rule and identified the missing issuance/posting dates in both the Statement of Facts and Argument. ECF No. 76-1 at 5, 10-11, 17.

**D. Plaintiff addressed recurrence and durability of the asserted cure.**

Defendants also state that Plaintiff "does not even attempt to argue that there is any danger of recurrence." Defs.' Opp'n at 7. ECF No. 76-1 addressed the February 2025 restoration narrative and whether the asserted cure is complete and durable. Id. at 17-18. Plaintiff identified the absence of a complete affected-item list, removal/restoration log, first-public-availability dates, and a public-location chain for the USAID-hosted materials Defendants say were restored. Id. Exhibit A was expressly offered for the limited mootness purpose of testing historical and current public access. Id. Defendants may disagree with that showing. Saying Plaintiff did not make it at all is wrong.

**E. Defendants generalize "nonexistence" beyond the item for which they supplied an item-specific basis.**

Defendants state broadly that "the information Plaintiff seeks simply does not exist." Defs.' Opp'n at 6. The only item-specific nonexistence showing concerns evaluations: Mr. Spett states that no evaluations specifically for FY 2023 ESF programs for Ukraine presently exist. ECF No. 74-2 ¶¶ 14-15. Plaintiff accepts that factual status for evaluations, as ECF No. 76-1 did, and does not ask the Court to compel creation of a nonexistent evaluation. ECF No. 76-1 at 12-13.

That item-specific evaluation showing does not establish compliance with the rest of § 2394c. For categories Congress required administering agencies to provide and the Secretary to publish, nonexistence may show upstream noncompliance rather than a cure. Defendants therefore must identify which unresolved categories supposedly do not exist, which exist but were published elsewhere, which are lawfully nonpublic, which were late, and which fall outside the FY 2023 Ukraine ESF program-and-award universe. Generalizing from evaluations to every other missing or unexplained category does not establish conformance.

**F. A complete administrative record is not a finding of statutory compliance.**

Defendants say they supplied a "thorough administrative record that demonstrates the availability of the required information" and characterize Plaintiff as trying to show the AR is "somehow incomplete." Defs.' Opp'n at 4. That misstates ECF No. 76-1. Plaintiff accepted the certification that AR000001-AR000970 is the complete non-privileged administrative record and then made a different point: the certification does not certify § 2394c conformance. ECF No. 76-1 at 4, 13. Plaintiff's argument is not that the litigation record is missing pages; it is that the completed record, measured against the statute, does not establish the required program-and-award information category by category. Id. at 13-15.

**VI. TRANSACTION-LEVEL FINANCIAL ROWS DO NOT, WITHOUT MORE, ESTABLISH THE STATUTORY SHOWING DEFENDANTS CLAIM.**

Plaintiff has never denied that AR 948-970 contains FY 2023 Ukraine ESF financial data. ECF No. 76-1 said exactly that in the Statement of Facts and again in the AR table and financial section. See ECF No. 76-1 at 5, 15-17. The point is whether those transaction rows establish the statutory program-and-award universe and the obligations-and-expenditures category Defendants say they prove.

The AR presents transaction-level fields including funding account, activity name, project number, transaction type, fiscal year, and amount. But, as Section IV explains, ForeignAssistance.gov's "activity" label can encompass multiple data objects, including records Defendants themselves characterize as awards. Those rows therefore do not, without program-and-award linkage, identify the complete award universe encompassed by Defendants' assertion that "each award" is covered.

Defendants also argue that the statute does not require the particular total Plaintiff requested. Plaintiff agrees that § 2394c does not command a single ESF grand-total box. The requested reconciliation is not a new statutory data element; it is a way to determine whether the existing transaction rows, when read with the rest of the AR, establish the covered program-and-award information and the financial category Congress required. The record should not be deemed compliant merely because it contains a large number of financial rows.

**VII. EXHIBIT A REFUTES DEFENDANTS' TEMPORARY-TAKEDOWN MOOTNESS THEORY AND DEFENDANTS HAVE NOT SHOWN A FULL AND DURABLE CURE.**

Defendants' mootness theory depends on a factual premise: that the website complied before February 2025, the USAID takedown created only a temporary access problem, and State later fixed that problem. Defs.' Opp'n at 2-3, 7-9. Exhibit A undercuts that premise for Plaintiff's

central example. Macroeconomic Support's Supporting Documents tab displayed "No Documents Found" on April 3, 2023 and again on January 31, 2025, before the takedown. A later capture displayed the 2019-2024 Ukraine CDCS, but Plaintiff does not rely on Exhibit A to prove when that document first became publicly available. The point is narrower: the pre-takedown MES captures are inconsistent with Defendants' account that the dispute is merely a temporary February 2025 website-restoration problem. ECF No. 76-2 at 21-28. Defendants' own brief states that "[a]fter Plaintiff raised these concerns, Defendants completed the transition" of certain materials. Defs.' Opp'n at 2.

Plaintiff does not overstate Exhibit A. Because § 2394c can allow links to public materials located elsewhere, an empty MES Supporting Documents tab does not by itself prove that every statutory document was unavailable. Exhibit A was offered for a narrower mootness purpose: to test Defendants' historical-and-current-access narrative. It shows that the gap was not merely a byproduct of the February 2025 takedown and that at least some asserted cure occurred after suit.

That is the voluntary-cessation problem. A defendant asserting mootness based on post-filing conduct must show that the challenged conduct has been fully and durably cured and that no effectual relief remains. See Friends of the Earth, Inc. v. Laidlaw Env't Servs., 528 U.S. 167, 189 (2000); Already, LLC v. Nike, Inc., 568 U.S. 85, 91-92 (2013); ECF No. 76-1 at 8, 17-18. Defendants have not made that showing. They provide no affected-item list, no pre-takedown-link-to-restored-location crosswalk, no item-specific restoration dates, and no current public-location chain for each item allegedly restored.

The continuing statutory regime makes the point current, not historical. Section 2394c(c)(2) requires FY 2023 subsection (b) information to remain within the immediately preceding five fiscal years of fully searchable coverage. At the time of this filing, FY 2023 remains within that window. Defendants' brief does not address subsection (c)(2) or explain how

the complete FY 2023 Ukraine ESF subsection (b) information can be identified and retrieved within the required searchable coverage. The same rolling five-year structure also confirms that this is not a one-time archival dispute: because FY 2024, FY 2025, and FY 2026 fall under the same continuing provide-and-publish regime, any claimed cure must be complete and durable across that regime, not merely an isolated restoration of selected FY 2023 materials.

The Court has already recognized the limits of Defendants' restoration theory. On May 5, 2026, the Court stated: "Defendants' hope that their apparent efforts to conform to statutory disclosure requirements will moot this matter is not good cause for an extension." Minute Order of May 5, 2026. Post-filing efforts may be relevant evidence, but the assertion that restoration occurred does not itself establish that the statutory conformance gap has been completely cured or that no effective relief remains.

**VIII. THE PROPER ALTERNATIVE TO PLAINTIFF'S SUMMARY JUDGMENT IS NARROW REMAND, NOT SUMMARY JUDGMENT FOR DEFENDANTS BASED ON UNTESTED ASSERTIONS OF COMPLETE COMPLIANCE.**

Plaintiff's cross-motion deliberately offered the Court an administrable, narrow alternative. If the certified record establishes nonconformance, the Court can grant Plaintiff summary judgment on Count I and direct completion of the discrete mandatory duties. If the relationship among programs, awards, activities, required links, transaction fields, dates, and restored public locations is not sufficiently explained, the proper course is not summary judgment for Defendants; it is narrow remand or supplementation. ECF No. 76-1 at 19-21.

That relief would respect both Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63-64 (2004), and agency implementation discretion. The Court need not design ForeignAssistance.gov, create a new database field, dictate a user interface, or order broad document production now. It can identify the statutory duties that must be satisfied and direct the

responsible officials to complete the required items or identify their statutory status. The agency remains free to choose the lawful technical means of compliance.

Defendants' contrary approach creates a false choice: either accept their current presentation and repeated assertion of full compliance, or improperly order a new map Congress did not expressly command. The requested mapping is only an administrable way to demonstrate whether the statutory categories are satisfied. If Defendants' full-compliance assertion is correct, identifying the existing statutory items and public locations should be straightforward; if it is not, narrow remand permits the agency to cure the problem without judicial micromanagement.

**CONCLUSION**

For the foregoing reasons, and for the reasons already set out in Plaintiff's Opposition and Cross-Motion (ECF No. 76-1), the Court should deny Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment; grant Plaintiff's Cross-Motion for Summary Judgment on Count I; or, at minimum, order narrow remand or supplementation. Defendants' September 28 brief does not establish conformance with § 2394c's continuing provide-and-publish regime or show that any post-filing restoration fully and durably moots Count I.

Dated: October 7, 2026

Respectfully submitted,

/s/ Scott M. Alexander

Scott M. Alexander
Plaintiff, pro se
2 2nd Avenue
Haddon Heights, NJ 08035
856-392-5211
scottalexander@comcast.net

**CERTIFICATE OF SERVICE**

I certify that on October 7, 2026, I filed the foregoing via the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ Scott M. Alexander
Scott M. Alexander, Plaintiff pro se